UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE TEDDY,

        Plaintiff,                        Hon. Ellen S. Carmody

v.

                                          Case No. 1:17-cv-986

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age on her alleged disability onset date. (PageID.218). She successfully completed high school and worked previously as a cashier, production assembler, production machine tenderer, cook helper, cleaner-housekeeper, and driver. (PageID.76-77). Plaintiff applied for benefits on May 20, 2014, alleging that she had been disabled since December 1, 2013, due to ADHD, depression, "maybe bi-polar," and high blood pressure. (PageID.218-30, 273). Plaintiff's applications were denied after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.85-175).

On May 4, 2016, Plaintiff appeared before ALJ David Kurtz with testimony being offered by Plaintiff and a vocational expert. (PageID.176-216). In a written decision dated July 7, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.67-78). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.25-30). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1]  1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

 2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) borderline intellectual functioning; (2) attention deficit hyperactivity disorder (ADHD); (3) personality disorder; (4) affective disorder; and (5) post-traumatic stress disorder (PTSD), severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.70-72).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she is limited to work involving simple oral instructions; (2) she is limited to simple, routine, and repetitive tasks but not at a production rate pace; (3) she can make only simple work-related decisions; (4) she can occasionally respond to supervisors, co-workers, and the public; and (5) in addition to normal breaks she would be off task ten percent of the time in an 8-hour workday and would be absent from work one day per month. (PageID.72).

A vocational expert characterized Plaintiff's past relevant work as a cleaner-housekeeper as unskilled, light work. (PageID.206-12). The vocational expert testified that Plaintiff, given her RFC, would still be able to perform her work as a cleaner-housekeeper. (PageID.206-12). The vocational expert further testified that there existed more than two million jobs in the national economy which Plaintiff could perform consistent with her RFC. (PageID.206-12). Based on this testimony, the ALJ found that Plaintiff was able to perform her past relevant work as a cleaner-housekeeper and, therefore, was not entitled to disability benefits.

I. **Medical Evidence**

The administrative record contained more than 300 pages of medical treatment records and Plaintiff's statements. The ALJ described this evidence as follows:

> The claimant alleges disability resulting from impairments including ADHD, depression, bipolar disorder and hypertension (Exhibit 1E/2). In the Function Report, the claimant reported she could not follow directions and had difficulty understanding (Exhibit 9E/1). The claimant testified she experienced problems

with her memory, had difficulty understanding, concentrating, and she struggled with making decisions and relating to people.

In terms of the claimant's alleged mental health impairments, the medical evidence of record noted diagnoses of mild intellectual disability, attention deficit hyperactivity disorder, personality disorder, affective disorder and posttraumatic stress disorder (Exhibits 2F/19; 5F/3-4; 8/F/30; 12F/9).

The evidence shows the claimant's symptoms were generally well-controlled with medications (Exhibits 6F/9; 7F/6, 18, 33-36; 13F/12, 17) despite some aggravation from transient, situational stressors (Exhibit 2F; 6F/9; 7F/6, 18). On referral from her primary care provider Roberto Miller, P.A., the claimant participated in outpatient counseling from December 2013 through June 2014 with Jonathan Bjork LPC, for her mental health symptoms. Therapy records noted the claimant had fluctuating mental symptoms associated with the breakdown of her marriage, the eventual death of her husband of 24 years, lack of employment, and instability of housing and financial burdens (Exhibit 2F). Nevertheless, despite these situational stressors, Mr. Bjork noted the claimant continued to make improvement (Exhibit 2F/19) and the claimant reported her medication helped her think more clearly about her situation (Exhibit 2F/16-18).

While the claimant alleged disabling mental health impairments, the evidence is not consistent with her allegations. In August 2014, the claimant was referred and participated in a psychological consultative examination with Allison Bush, M.S., LLP, the claimant reported no inpatient psychiatric hospitalization. On examination, she was in contact with reality and able to make and maintain good eye contact, she was clear, logical and organized. She was able to focus and concentrate during the examination. The claimant reported feeling helpless, but denied any suicidal ideation and was hopeful about the future. The claimant was oriented to person, place, time and situation. She was able to recall six numbers forward and four in reverse and recall three of three objects. The claimant successfully performed simple calculations and serial sevens (Exhibit 5F/3-4).

The evidence shows the claimant primarily sought and received non-specialized mental health treatment from Mr. Miller, her primary care provider and outpatient counseling from licensed master social workers and licensed professional counselors who are not acceptable medical sources (Exhibits 6F; 7F; 8F; 10F; 11IF;

13F). Office treatment records from Mr. Miller covering the period December 2014 through May 2015 noted some minor adjustments to the claimant's medications to accommodate her fluctuating moods and occasional symptom flares due to conflict and stress (Exhibit 6F/9; 7F/6, 18). However, the claimant's symptoms overall were generally controlled and improved with her conservative treatment (Exhibit 7F/10), as the examinations showed she was oriented, had appropriate mood and affect, had normal insight and judgment, she was not anxious, had no agitation, she was not forgetful or suicidal (Exhibit 6F/12; 7F/12, 16, 20).

Outpatient counseling records from Nicole Reagan, LLPC covering the period April 2015 through August 2015 noted the claimant's mood had continued to improve. She had done well with her emotional stability, because her housing situation was stable. Mental status examinations were largely normal (Exhibit 8F/44-67). Likewise, in a counseling discharge summary Mr. Bjork noted the claimant had made progress (Exhibit 6F/8).

Moreover, in the July 2015 psychiatric evaluation with Tamlynn Evans, APRN, BC, NP, the claimant reported some increased symptoms. However, the record noted the claimant reported situational stress related to her primary support group, housing, occupational and economic situations (Exhibit 8F/13-14). Nevertheless, her examination findings were mostly normal (Exhibit 8F/13-14). Subsequent records from Mr. Miller through August 2015 indicated the claimant's symptoms were well controlled with medications, as she had a normal attention span and concentration, no memory loss, appropriate mood, affect, and no flight of ideas (Exhibit 13F/12, 17).

The September 2015 psychological evaluation with Lori Goldin, MA, LLP, noted the claimant actively participated and engaged during testing. She was administered the Wechsler Adult Intelligence Scale 4th Edition (WAIS-IV) and achieved the scores as referenced above with a full-scale IQ score of 70 (Exhibit 12F/6). The test scores were considered to be valid (Exhibit 12F/4). Ms. Goldin diagnosed mild intellectual developmental disability, posttraumatic stress disorder, cluster C personality disorder and dependent personality disorder (Exhibit 12F/9).

Subsequent outpatient counseling records and treatment records from Mr. Miller through March 2016 noted no significant change in the claimant's attention or concentration, even though she had reported she had not taken her medication in weeks (Exhibit l0F/3-

4). While she had some complaints of anxiety, the record noted this appeared driven by situational factors and was not always anxiety, but agitation (Exhibit 10F/8). Moreover, the clinician indicated there was no evidence of a need for Adderall, at it may be contributing to her agitation and mood instability (Exhibit 10F/8). The claimant's mental status examinations remained largely normal (Exhibit 10F/8, 18, 22, 28, 30, 32, 34). Overall Mr. Miller noted continued symptom stability with conservative treatment. The claimant had substantial improvement, there were no significant problems with her ADHD or depression and her symptoms were controlled with no significant changes to her medications. The records indicated she was not anxious, she had no mood swings, no suicidal ideation and had normal attention span and concentration (Exhibit 13F/l, 5, 8-9). Moreover, the claimant had moved with her daughter and she was doing much better (Exhibit 13F/2).

Although some of the claimant's Global Assessment of Functioning (GAF) ratings in the record were at or below 50 (Exhibit 8F/13, 31), I note that the GAF is only a subjective estimate by a clinician of the claimant's status in the preceding two weeks. The lower scores were provided upon the claimant's initial admission to treatment after a gap in her treatment history and prior to being prescribed psychiatric medication. The remainder of the scores in the record were as high as 72, which indicated only mild symptoms (Exhibits 2F/4, 14, 17, 20; 6F/7). I give the GAF ratings partial weight, as the consistency of the higher GAF scores in the record are consistent with the signs and findings upon examination in the record, yet the GAF ratings do not assign corresponding functional limitations and do not indicate whether the ratings are intended to describe symptom severity or limitations in functioning.

(PageID.72-74).

## II. Section 12.05

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that she is entitled to relief because the ALJ's determination that she does not satisfy Section 12.05(C) of the Listings is not supported by substantial evidence. Section 12.05 of the Listing provides, in relevant part, the following:

8

12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>>
>> 2. Marked difficulties in maintaining social functioning; or
>>
>> 3. Marked difficulties in maintaining concentration, persistence or pace; or
>>
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2016).

Plaintiff asserts that she satisfies section 12.05(C). As noted above, testing conducted in September 2015 revealed that Plaintiff possessed a full-scale IQ of 70. (PageID.662-71). The record also supports that Plaintiff experiences additional emotional

9

impairment(s) which impose "additional and significant work-related limitation of function." While Plaintiff satisfies the criteria articulated in subsection (C), she must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that she experienced deficits in adaptive functioning prior to age 22.

In support of her position, Plaintiff cites to an October 12, 1972 evaluation which revealed that she possessed a full-scale IQ of 80. (PageID.604-05). The examiner also noted that Plaintiff "is of limited ability though not retarded [i.e., intellectually disabled]." (PageID.605). Other than noting the results of this examination, Plaintiff offers no evidence that she experienced the requisite adaptive deficits prior to age 22. The ALJ also noted that Plaintiff "does not have the requisite adaptive deficits, as she can manage her personal care independently, prepare meals, complete household chores, go out alone, drive, shop and pay bills." (PageID.72). As courts recognize, "[a]daptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Commissioner of Social Security*, 240 Fed. Appx. 692, 698 (6th Cir., July 5, 2007); *see also, Burrell v. Comm. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members").

Plaintiff bears the burden to establish that she satisfies a Listing. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). She has failed to meet

her burden. The ALJ's conclusion that Plaintiff does not satisfy Section 12.05(C) of the Listings is supported by substantial evidence. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: September 27, 2018   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge